[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Wood County Court of Common Pleas, following a plea, in which appellant was found guilty of one count of felonious assault, one count of attempted murder, one count of rape, and one count of kidnaping, and was sentenced to serve a total of twenty-seven years in prison. For the reasons that follow, we affirm the judgment of the trial court.
Appellant, Scott Cole, sets forth the following five assignments of error on appeal:
"FIRST ASSIGNMENT OF ERROR
 "DEFENDANT-APPELLANT WAS DENIED DUD PROCESS WHEN THE TRIAL COURT ERRED IN SENTENCING DEFENDANT-APPELLANT FOR THE OFFENSES OF ATTEMPTED MURDER AND FELONIOUS ASSAULT WHEN SUCH MULTIPLE SENTENCING IS PROSCRIBED BY OHIO REVISED CODE SECTION 2941.25.
"SECOND ASSIGNMENT OF ERROR
 "THE TRIAL COURT ERRED BY NOT CONDUCTING A HEARING TO DETERMINE WHETHER TWO OFFENSES DEFENDANT-APPELLANT PLED TO WERE ALLIED AND OF SIMILAR IMPORT, AND WHETHER THEY WERE COMMITTED WITH A SINGLE ANIMUS.
"THIRD ASSIGNMENT OF ERROR
 "THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING DEFENDANT-APPELLANT TO TERMS DISPROPORTIONATE TO HIS ACTS AND WITHOUT DUE CONSIDERATION OF STATUTORY GUIDELINES, THEREBY DENYING DEFENDANT-APPELLANT HIS RIGHT TO DUE PROCESS.
"FOURTH ASSIGNMENT OF ERROR
 "DEFENDANT-APPELLANT'S PLEA OF GUILTY WAS NOT ENTERED VOLUNTARILY, INTELLIGENTLY, AND KNOWINGLY WITH A FULL UNDERSTANDING OF THE CONSEQUENCES OF THE PLEA AS REQUIRED BY RULE 11 OF THE OHIO RULES OF CRIMINAL PROCEDURE.
"FIFTH ASSIGNMENT OF ERROR
 "DEFENDANT-APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS."
In the early morning hours of June 20, 1998, appellant walked into the home of his mother-in-law, Sally Schramm, in Cygnet, Ohio, where appellant's wife, Betsy Taper, and her friend, Stephanie Reese, were sleeping in the living room. Shortly after appellant entered Schramm's home, he attacked Reese and choked her. Appellant then took Taper from the home against her will, dragged her across the front yard, and forced her to get into his truck.
Schramm, who woke up when she heard Reese and Taper screaming, ran out of the house and attempted to stop appellant from putting Taper in his truck. Schramm was still holding on to the passenger side door when appellant began driving the truck away. Appellant then told Schramm to let go of the truck, or he would kill Taper by hitting her on the head with a hammer. Instead of letting go of the truck, Schramm climbed into the passenger seat. Appellant again threatened to kill Taper with the hammer if Schramm did not exit the vehicle. Sometime thereafter, appellant drove the truck north onto I-75. When Schramm eventually agreed to exit the vehicle, appellant pulled over to the side of the highway. Schramm then flagged down a passing truck and notified police that appellant had kidnaped her daughter.
Appellant eventually exited I-75 at the Wooster Street exit in Bowling Green. He then drove the truck into the parking lot of a nearby gas station, where he dragged Taper out of the truck, removed some of her clothing, and raped her. Appellant then struck Taper's head against a nearby guardrail and attempted to rape her again. By the time police arrived, appellant was choking Taper from behind with his right arm, while applying additional pressure to his right arm with his left arm. Appellant did not release his hold on Taper until after Bowling Green Police Sergeant Alan Carsey struck him repeatedly on his left arm with a flashlight. When appellant finally released Taper, she fell face-forward on the concrete, unconscious. At the time of the attack Taper, who is hearing impaired and mute, was four months pregnant with appellant's child.
On July 15, 1998, appellant was indicted by the Wood County Grand Jury on one count of aggravated burglary in violation R.C. 2911.11(A) (1), one count of felonious assault in violation of RC. 2903.11(A) (1), one count of kidnaping in violation of R.C.2905.01, one count of rape in violation of R.C. 2907.02, one count of attempted rape in violation of R.C. 2907.02 and R.C. 2923.02, and two counts of attempted murder in violation of R.C. 2903.02
and R.C. 2923.02. On August 26, 1998, a competency hearing was held, at which a report prepared by Gregory Forgac, Ph.D., of the Court Diagnostic and Treatment Center, was entered into evidence.
Forgac stated in his report that he interviewed appellant on August 12, 1998. Forgac further stated that appellant reportedly endured a "chaotic" and sometimes violent childhood, and that appellant lived in several different foster homes before he was adopted by an uncle. Forgac also reported that, at the time of the interview, appellant was taking four unspecified medications for "depression, sleep, and voices." Forgac stated that appellant had received outpatient mental health treatment on several past occasions, he reported using alcohol since age sixteen, and he began smoking marijuana in 1996, followed by later use of "acid, crack, cocaine, mescaline, and crank." Forgac ultimately concluded that appellant had an adequate understanding of the nature of the legal proceedings against him and was able to assist in his own defense. On September 3, 1998, after reviewing Forgac's report, the trial court filed a judgment entry in which it found appellant competent to stand trial.
On November 24, 1998, pursuant to a plea agreement, appellant entered a plea of guilty to one count each of felonious assault, kidnaping, rape, and attempted murder. On January 11, 1999, the trial court filed a judgment entry in which it stated that it "considered the record, oral statements, any victim impact statement and PSI prepared, as a well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors under. R.C. 2929.12. In addition, the court stated that:
 "Upon application of the factors under R.C. 2929.12, the Court finds that a community control sanction or a combination of community control sanctions would demean the seriousness of the offense because one or more factors under R.C. 2929.12 indicate the Defendant's conduct was more serious than conduct normally constituting the offense.
 "Therefore, the Court finds that the presumption in favor of a prison sentence has not been overcome, and that a prison term is consistent with the purposes and principles of sentencing."
Ultimately, the trial court sentenced appellant to serve three years in prison for felonious assault, four years in prison for kidnaping, and ten years each for rape and attempted murder. In addition, the court ordered appellant to serve all four of his sentences consecutively, for a total of twenty-seven years in prison. Pursuant to the plea agreement, the indictment was amended and counts one, five and seven were dismissed. On January 27, 1999, a timely notice of appeal was filed.
Appellant's first two assignments of error were withdrawn by appellant at oral argument, and therefore will not be addressed in this decision.
Appellant asserts in his third assignment of error that the trial court abused its discretion by sentencing him to serve a total of twenty-seven years in prison.
The overriding purpose of the felony sentencing statutes is to "protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). Accordingly, the court's sentence should be reasonably calculated to achieve these purposes, and the sentence should be commensurate with the seriousness of the offender's conduct and its impact upon the victim. R.C. 2929.11(B).
Pursuant to R.C. 2929.12(A), the trial court has discretion to determine the most effective way to comply with the principles and purposes of sentencing set forth in R.C. 2929.11. In so doing, however, the court must consider the factors set forth in R.C. 2929.12(B) and (C), which relate to the seriousness of the defendant's conduct, and those factors set forth in R.C.2929.12(D) and (E), which relate to the likelihood that the defendant will commit future crimes.
In addition to the above, R.C. 2929.14(B) provides that the court must impose the shortest prison term authorized on a first-time offender, unless it finds on the record that to do so would demean the seriousness of the offense or, alternatively, that such a term "will not adequately protect the public from future crime by the offender or others." The court's discretion to impose the maximum sentence in any felony case is limited by R.C. 2929.14(C) which states, in relevant part:
 "* * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, [and] upon offenders who pose the greatest likelihood of committing future crimes * * *."
Finally, pursuant to R.C. 2929.14(E) (4), a trial court may require an offender to serve multiple prison terms consecutively if makes the following relevant findings:
 "that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
"* * *
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
Although the court need not always use the "magic words" of the statute, substantial compliance is required. See State v.Estrada (September 18, 1998), Sandusky App. No. S-98-006, unreported. Substantial compliance may be found where there are sufficient findings on the record to support the trial court's sentence.Id.; State v. Edmonson (1999), 86 Ohio St.3d 324, at the syllabus.
In this case, testimony was presented at the sentencing hearing by Kim Snyder, Betsy Taper, and Sally Schramm, who testified, with the aid of a deaf interpreter, as to the impact of appellant's attack on Taper. Schramm testified that appellant should be sent to prison for a long period of time so her children could "grow up without fear." Taper testified that, as a result of the attack, she has flashbacks, suffers from depression, and constantly imagines that someone is following her. Taper further stated that she loved appellant and was shocked when he tried to kill her. The prosecutor then recommended that appellant be sent to prison for twenty years.
In addition to the above testimony, a copy of the presentence report was prepared by the Wood County Adult Probation Department, in which the investigating probation officer reported that appellant stated he was "smoking crack cocaine" on the night of the attack, after which he "went out drinking" with his brother. Appellant further stated in the interview that after he left his brother's house, he went to Schramm's house to see his wife. Appellant stated that he did not plan on attacking Taper before he went into Schramm's house; however, he became angry when Reese woke up and began yelling at him. Appellant further stated to the investigator that his actions "felt good at the time." The presentence report also contained a lengthy list of appellant's prior traffic violations, including several license suspensions, and one charge of writing bad checks which was dismissed in 1997.
As to appellant's mental status, he stated that he has been diagnosed with "Major Depressive Disorder," and frequently has feelings of hopelessness, depression, decreased energy and difficulty sleeping. The interviewer noted that appellant reportedly attempted suicide on several occasions while in jail on the current charges. Appellant also admitted to having a substantial drug and alcohol abuse problem, including heavy use of L.S.D., mescaline and cocaine. Appellant reported that on the night of the attack, he had consumed several beers and a bottle of tequila, and had smoked crack cocaine.
At the close of all the testimony, the trial court stated that it had reviewed the presentence report and had read letters written to the court by appellant, the adult probation department, and several other individuals. The court acknowledged both appellant's "true sorrow and remorse" and his relatively violent upbringing. The court stated that appellant "[c]an't say `I was intoxicated' or `I was using drugs' or whatever. He placed himself in that state by his own free will." The court further stated that the circumstances of the attack "continued for a significant period of time and involved others. [Appellant] put himself, put his wife at risk * * *, unborn child at risk, others in the family at risk." In addition, the court noted that appellant was driving his truck on an interstate highway and could have harmed or killed other drivers or police officers by his conduct.
The court stated that it was compelled, under the facts of this case, to order appellant to serve the maximum sentence for rape and attempted murder. The court further stated that it hoped appellant's two sons "can re-establish or re-connect" with their father when he is released from prison. Finally, in sentencing appellant, the court stated that it:
 "has considered the record, the oral statements, the victim's statements, presentence investigation which was prepared, as well as the principles and purposes of sentencing as set out under Ohio Revised Code 2929.11, and has balanced the seriousness and recidivism factors under Revised Code 2929.12. * * *
 "The Court further finds pursuant to 2929.14(B), the shortest prison terms possible on these charges will demean the seriousness of the offense and will not adequately protect the public; and, therefore, imposes a greater term in each of the particular counts.
 "The Court likewise finds that the maximum terms is appropriate in Count 4 and Count 6. The Court finds that the acts committed in Count 4, rape, and Count 6, attempted murder, is the most serious and worst form of the offense, and poses the greatest likelihood of recidivism.
 "With respect to the sentences, the Court will order theses sentences to be served consecutively. The Court feels it's necessary to fullfil [sic] the purposes of 2929.11, and not disproportionate to the seriousness of the offender's conduct and the danger it poses. And the Court further finds that the Defendant caused great and unusual harm; and further that the Defendant has a criminal history that requires consecutive sentencing. Most important, however, of all for the consecutive sentencing in is the nature of the offenses, the nature of the victim, and the nature of the circumstances."
This court has reviewed the entire record of proceedings before the trial court and, upon consideration thereof and the law, finds that the trial court used the appropriate "magic words" in sentencing appellant, and the record contains sufficient evidence to support the trial court's sentence in this case. Accordingly, the trial court did not abuse its discretion by sentencing appellant to serve a total of twenty-seven years in prison, and appellant's third assignment of error is not well-taken.
Appellant asserts in his fourth assignment of error that the trial court erred in accepting his guilty plea without complying with Crim.R. 11(C) (2) (a). In support thereof, appellant argues that his plea was not voluntarily made with a full understanding of the nature of the charge against him because the trial court did not explain to him the "potential defense" of voluntary intoxication.
In Ohio, voluntary intoxication is available as an affirmative defense in rare instances where the accused who is charged with a specific intent crime can demonstrate that he was "so intoxicated as to be mentally unable to intend anything."State v. Otte (1996), 74 Ohio St.3d 555, 564. However, pursuant to Crim.R. 11(C), the court is required only to make certain that the defendant understands the nature of the charge against him before accepting a guilty plea. Affirmative defenses are not elements of a charge. See State v. Reynolds (1988), 40 Ohio St.3d 334. Accordingly, appellant's claim that the court was required to explain to him the affirmative defense of voluntary intoxication before accepting his plea must be rejected as a matter of law. Appellant's fourth assignment of error is not well-taken.
Appellant asserts in his fifth assignment of error that he received ineffective assistance of trial counsel because the record does not demonstrate that his trial counsel advised him of the affirmative defense of voluntary intoxication.
The standard to be applied to claims of ineffective assistance of counsel is whether the defendant has shown that: (1) trial counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington (1984),466 U.S. 668, 687. To prevail on a claim of ineffective assistance of counsel, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. at 689.
A review of the record demonstrates that appellant informed the court at sentencing that he was satisfied with the representation provided by his counsel, and that counsel had discussed with him all available defenses. Further, the written plea signed by appellant states: "I understand the nature of the charges against me and the possible defenses I may have." The record contains no additional evidence to substantiate appellant's claim that he was not informed by counsel of all the defenses available to him.
This court has thoroughly reviewed the record and, upon consideration thereof, we find that there is no indication that appellant was deprived of effective assistance of counsel. Accordingly, appellant has not met his burden to show that he was deprived of a fair trial due to counsel's performance, and his fifth assignment of error is not well-taken.
The judgment of the Wood County Court of Common Pleas is hereby affirmed. Court costs of these proceedings are assessed to appellant.
Peter M. Handwork, P.J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.
 _______________________________ JUDGE